# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-1256

_____

Kathy Heisler,                                   *
                                                 *
            Appellant,                            *
                                                 *        Appeal from the United States
      v.                                          *        District Court for the
                                                 *        District of Minnesota.
Metropolitan Council,                            *
                                                 *              [PUBLISHED]
            Appellee.                             *


_____

Submitted: October 10, 2002
Filed: July 3, 2003

_____

Before HANSEN,[1] Chief Judge, MAGILL and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

Kathy Heisler filed an employment discrimination case under the Americans With Disabilities Act, see 42 U.S.C. §§ 12101-12213 (2000), and the Minnesota Human Rights Act, see Minn. Stat. Ann. §§ 363.01-363.20 (West 1991 & Supp. 2002), alleging that her employer, the Metropolitan Council failed to accommodate her disability and retaliated against her when she asked for a reasonable

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

accommodation. The district court granted summary judgment to Metropolitan Council and Ms. Heisler appealed. We affirm the district court's grant of summary judgment as to Ms. Heisler's disability claim but reverse and remand Ms. Heisler's retaliation claim to the district court.

## I.

Ms. Heisler began her employment with Metropolitan Council ("Met Council") in 1988, working as a Fare Collection Supervisor. Met Council is a political subdivision of the State of Minnesota that, among other things, oversees public transportation in Minneapolis and St. Paul. Ms. Heisler's position required her to work from 4:30 p.m. until 2:30 a.m., as her duties involved supervising vault pullers, who removed fare boxes from city buses when they returned to the garage in the evening. The bulk of the vault pulling occurred between 5:00 p.m. and 7:30 p.m. All four of Met Council's Fare Collection Supervisors worked the same hours.

Ms. Heisler has suffered from some form of depression for over twenty years and has been in therapy and on medication for much of that time. In February 1998, she was diagnosed with "major depressive disorder, recurrent, without full inter-episode of recovery, with seasonal pattern." (Appellant's App. at 117.) In March 1998, Heisler's medications were changed in an attempt to better manage her depression. She was also diagnosed with dyssomnia and referred for a sleep disorder evaluation at that time. (Id. at 115.) In June 1998, Heisler was prescribed Ritalin in addition to her existing anti-depressant medications and agreed to resume using ten thousand lux lights, which are bright lights Heisler had in her apartment that simulated sunlight. She was also encouraged to spend more time outside of her apartment in the sunlight and to resume an exercise regimen. (Id. at 114.)

Heisler's depression worsened the following winter, and she was hospitalized for six days in January 1999 after her suicidal ideations increased significantly. Met

Council allowed her to take medical leave under the Family Medical Leave Act. Heisler's doctor released her to return to work for four hours per day on February 12. Met Council accommodated the doctor's restrictions by allowing Heisler to work from 4:00 p.m. to 8:00 p.m., when the bulk of the vault pulling was completed, and allowed Heisler to use sick leave and vacation leave to remain at full-time pay and benefits.

Heisler's physician released her to work full time beginning March 22 but limited her to day-shift hours because working at night seemed to exacerbate her depression. Her physician recommended continuing the part-time 4:00 p.m. to 8:00 p.m. shift until April 2 to give Met Council time to make the accommodation. Heisler's supervisor, Scott Peterson, suggested that Heisler continue the part-time schedule until April 30, with which Heisler agreed. Heisler continued that schedule through June, as Peterson informed her that Met Council was unable to accommodate her request for day-shift work because an essential function of a Fare Collection Supervisor was supervising the vault puller operation that occurred only during the evening and nighttime hours. Met Council provided Heisler with job listings and encouraged her to apply for other open positions through the regular employee selection process. Heisler applied for various day-shift positions, but was not hired for any of them for various reasons.

On June 10, Met Council received notice from Heisler's physician that Heisler needed a one-week FMLA leave of absence beginning June 14, and that as of June 21, Heisler would be cleared to work only between 8:00 a.m. and 5:00 p.m., as she was disabled from working evening or night shifts. Heisler did not return to work for Met Council after the one-week leave.

On July 8, Met Council informed Heisler that she was being "disqualified" from the position of Fare Collection Supervisor, as she was unable to work the required hours. This effectively discharged Heisler from employment with Met Council. Heisler appealed the discharge and requested a hearing pursuant to the

3

Minnesota Veterans Preference Act, as she had previously served in the military. Following a hearing, the hearing officer determined that Met Council acted reasonably in discharging Heisler for being "incompetent" as defined by the Veterans Preference Act, because she was physically incapable of doing her job. Heisler filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and ultimately sued Met Council in federal court. The district court granted Met Council's motion for summary judgment, from which Heisler now appeals.

## II.

Heisler's complaint alleged that Met Council refused to accommodate her and retaliated against her for engaging in statutorily protected activity in violation of both the Americans With Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). Both parties filed motions for summary judgment. The district court granted summary judgment to Met Council, finding that Heisler did not suffer from a disability within the meaning of the ADA or the MHRA. The district court noted that Heisler "assert[ed] in passing that she was also retaliated against," Heisler v. Metropolitan Council, No. 00-2749, 2001 WL 1690052, at *6 n.11 (D. Minn. Dec. 14, 2001), and granted summary judgment on the retaliation claim.[2] On appeal, Heisler argues that the district court erred in finding she was not disabled and that the district court erred in granting summary judgment on the retaliation claim because Met Council did not raise the issue in its summary judgment motion.

We review de novo a district court's grant of summary judgment, construing the record in the light most favorable to the non-moving party. Mohr v. Dustrol, Inc.,

---

[2]Heisler's complaint actually included two retaliation claims, one under the ADA and one under the MHRA. The allegations of the two claims are identical and we treat them as one claim for purposes of this opinion.

4

306 F.3d 636, 639 (8th Cir. 2002). The moving party bears the burden of establishing its entitlement to judgment as a matter of law and the absence of any issues of material fact. Stone Motor Co. v. General Motors Corp., 293 F.3d 456, 465 (8th Cir. 2002). The burden is then shifted to the non-moving party, who may not rest on the pleadings, but must provide specific facts showing that issues of material fact exist for trial. Id.; see also Fed. R. Civ. P. 56(e). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.    Disability Under the ADA[3]

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). "To establish a prima facie case of discrimination under the ADA, [Heisler] must establish that (1) [s]he is disabled within the meaning of the ADA; (2) [s]he is qualified to perform the essential functions of h[er] job with or without reasonable accommodation; and (3) [s]he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability." Dropinski v. Douglas County, 298 F.3d 704, 706-07 (8th Cir. 2002).

The district court found that Heisler was not disabled within the meaning of the ADA, which defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

---

[3]Minnesota courts facing disability claims under the MHRA apply the same standards federal courts apply to ADA claims. See Somers v. City of Minneapolis, 245 F.3d 782, 788 (8th Cir. 2001). Although we refer only to the ADA, our analysis applies to Heisler's claims under both the ADA and the MHRA.

42 U.S.C. § 12102(2). This threshold inquiry requires an individualized analysis of the effects of the claimed impairment on the individual's life activities. Sutton v. United Airlines, Inc., 527 U.S. 471, 483 (1999); Mathieu v. Gopher News Co., 273 F.3d 769, 775 (8th Cir. 2001). What disables one person does not necessarily disable another. Further, the Supreme Court has instructed that we analyze only those major life activities which the plaintiff asserts are limited by the claimed impairment. See Bragdon v. Abbott, 524 U.S. 624, 638 (1998) (limiting review to the question of whether reproduction is a major life activity where that was the only issue raised and discussed below). The parties do not dispute that major depressive disorder is a mental impairment. The focus of this appeal is whether Heisler's major depressive disorder substantially limits any of her major life activities.

Under the regulations that guide the interpretation of the ADA, to which we have repeatedly looked for guidance, an impairment is substantially limiting if it renders a person "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1) (2003). See also Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1088 (8th Cir. 2001). The regulations counsel us to consider "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment," 29 C.F.R. § 1630.2(j)(2), in determining whether an individual is substantially limited in a major life activity.

Heisler argues that the district court erred in assessing her credibility and should have taken her testimony about the effects of her depression on various life activities at face value. She further argues that evidence about her work ability was irrelevant because she was not claiming that her depression substantially limited her

ability to work.[4] Although a district court reviewing a summary judgment motion is to assess the evidence in the light most favorable to the nonmoving party, that does not mean that the district court must ignore other evidence. Even though Heisler is not claiming that her depression substantially limits her ability to work, her work activities are relevant in assessing the extent that her depression limits the condition, manner, or duration of her ability to perform other life activities. Further, bald assertions that one is limited in a major life activity are insufficient to withstand summary judgment. See Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997) (holding that district court did not err in discounting conclusory statements in affidavits or deposition testimony in assessing whether claimant was substantially limited in a major life activity). We turn then to the major life activities that Heisler claims are substantially limited by her depression.

Heisler alleges that her depression substantially limits her ability to sleep, interact with others, concentrate, and care for herself. We assume for the purposes of this opinion that each of these activities is a major life activity as contemplated by the ADA. See Swanson v. Univ. of Cincinnati, 268 F.3d 307, 316 (6th Cir. 2001) (sleeping); Moysis v. DTG Datanet, 278 F.3d 819, 825 (8th Cir. 2002) (approving of the Seventh Circuit's treatment of interacting with others and concentrating as activities that "feed into the major life activities of learning and working"); Cooper, 246 F.3d at 1088 (caring for oneself). We must decide whether Heisler's depression substantially limited her ability to perform any of these activities.

---

[4]Heisler has repeatedly denied that her depression substantially limits her ability to work, where her psychologist has released her to work 40-hour weeks, but limited her to the hours between 6:00 a.m. and 5:00 p.m. And rightly so, as we have repeatedly held that "[a]n employee is not substantially limited in the major life activity of working by virtue of being limited to a forty-hour work week." Kellogg v. Union Pacific R.R. Co., 233 F.3d 1083, 1087 (8th Cir. 2000). See also Taylor v. Nimock's Oil Co., 214 F.3d 957, 960-61 (8th Cir. 2000); Berg v. Norand Corp., 169 F.3d 1140, 1145 (8th Cir.), cert. denied, 528 U.S. 872 (1999).

We agree with the district court that Heisler's assertions that she has difficulty sleeping are too conclusory to meet her burden of coming forward with evidence that her depression substantially limits her ability to sleep. Heisler's medical records reflect that she had disturbed sleep, was diagnosed with sleep apnea, and was taking medication to help her sleep. However, Heisler did not even mention sleeping as one of the negative effects caused by her depression during either her deposition or her Veterans Preference hearing. (Appellant's App. at 213, 353.) The record does not reveal the severity of her sleep apnea or whether her sleeping has improved with medication. Heisler has simply failed to establish that her depression, or any other impairment, significantly restricted her ability to sleep as compared to the general population. See Swanson, 268 F.3d at 316 (holding that depression did not substantially limit ability to sleep where medical resident alleged that he slept less than five hours per night and that the quality of his sleep improved "somewhat" with medication); Pack v. Kmart Corp., 166 F.3d 1300, 1306 (10th Cir.) (holding that "[w]hile the evidence showed Pack had episodes of sleep disruption and/or waking without feeling rested during 1994 and January 1995, there is no indication that her sleep problems were severe, long term, or had a permanent impact" although Pack testified that she often got only two to three hours of sleep in a night), cert. denied, 528 U.S. 811 (1999); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644 (2d Cir. 1998) (holding that plaintiff's use of medication as a sleep aid and his testimony that he got a "tough night's sleep" did not establish that his back condition substantially limited his ability to sleep compared to the general population), cert. denied, 526 U.S. 1018 (1999).

Regardless of whether we treat interacting with others as a separate major life activity or a subset of the broader activities of learning or working, Heisler has similarly failed to provide sufficient evidence that her major depressive disorder has substantially limited her ability to interact with others or caused her to experience "high levels of hostility, social withdrawal, or failure to communicate when necessary." McAlindin v. County of San Diego, 192 F.3d 1226, 1235 (9th Cir. 1999)

8

(internal quotations omitted), amended by 201 F.3d 1211 (9th Cir.), cert. denied, 530 U.S. 1243 (2000). She testified during her deposition that she had "feelings of great sadness and isolating [her]self and not talking to anybody or calling anybody." (Appellant's App. at 213.) However, she also testified that she was still able to perform her job duties, which required her to supervise other employees. When asked if she had a support network, Heisler testified that she "call[s] a couple of good friends or [her] brother or even [her] friend's mom." (Id.) Further, Heisler's psychologist, in informing Met Council why it was necessary for Heisler to work during the day shift, stated that Heisler is isolated because she worked the night shift, not because of her depression. She also stated that Heisler's "known support system works during the day and is difficult to connect with when they are working at opposite shifts." (Id. at 201.) Thus, Heisler was isolated because her support network worked during a different shift than she did, not because of her depression. Heisler has failed to meet her burden of establishing that her depression significantly restricted her ability to interact with others as compared to the general population. See Doyal v. Okla. Heart, Inc., 213 F.3d 492, 496 (10th Cir. 2000) (holding that assertions that plaintiff stopped visiting with friends was insufficient to meet burden in summary judgment, where employer introduced uncontroverted evidence that employee interacted normally at work).

Heisler next claims that her depression substantially limited her ability to concentrate. Again, Heisler has failed to produce evidence that her depression significantly restricts her ability to concentrate (or learn or work) as compared to the general population. Heisler testified at her deposition that her depression affected her ability to concentrate, causing her to take twice as much time to perform a task or making it difficult to make a decision. (Appellant's App. at 215.) She testified during the Veterans Preference hearing that the depression caused a "lack of concentration," (id. at 353), but did not elaborate on how her depression affected the "condition, manner or duration" of her ability to concentrate. Further, she testified that she could perform her job, including ensuring that money and data were collected, coordinating

9

maintenance staff to fix things, and ensuring that the employees she supervised complied with policies and procedures (id. at 353-54), which no doubt required concentration, and she received only favorable performance reviews. Heisler must do more than assert that her depression makes it difficult to concentrate to survive summary judgment. Her conclusory statements that she has difficulty concentrating, coupled with her own testimony that she could perform her job, does not suffice to establish that her major depressive disorder significantly restricted her ability to concentrate–either in and of itself or as a subset of learning or working–as compared to the general population.

Lastly, Heisler argues that her major depressive disorder substantially limits her ability to take care of herself. Heisler testified during the Veterans Preference hearing that "[w]ith depression it's just hard to perform manual tasks, everyday tasks like taking the garbage out and sweeping the floor, daily hygiene" (id. at 353), and during her deposition that "it is hard to get out of bed" (id. at 213). However, Heisler also testified that she has suffered from depression for twenty years, yet has lived on her own and maintained employment during that time. She has presented no evidence that she has ever needed help in caring for herself. Her conclusory statements that it is sometimes hard to get out of bed and that is difficult to maintain daily hygiene simply do not provide sufficient evidence that her depression substantially limits her ability to care for herself. See Cooper, 246 F.3d at 1088 (holding that plaintiff failed to establish that depression substantially limited plaintiff's ability to care for herself where she lived independently and successfully cared for her livestock and farm).

Heisler no doubt suffers from major depressive disorder that makes her life difficult. However, she has failed to present evidence sufficient to establish that those difficulties rise to the level of substantially limiting that is required to maintain a claim under the ADA. See Cody v. Cigna Healthcare of St. Louis, Inc., 139 F.3d 595, 598 (8th Cir. 1998) ("While [plaintiff's] statements, viewed in the light most favorable to her, demonstrate that her depression caused difficulties in her life, she

did not show it was such a substantial impairment as to amount to a disability under the ADA.").

B.     Record of Impairment

Heisler also claims that she is disabled under the ADA because she has a record of a qualifying impairment. See 42 U.S.C. § 12102(2)(B). To have a record of an impairment, an employee must "ha[ve] a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). See also Taylor, 214 F.3d at 961. Heisler argues that her numerous hospitalizations establish that she has a record of an impairment. First, "simply being hospitalized [does not] establish[] a record of an impairment under the ADA." Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998), cert. denied, 526 U.S. 1113 (1999). Second, the record must be of an impairment that substantially limits a major life activity. Being hospitalized on four occasions for short periods of time, taking medications, and receiving shock therapy treatments do not in and of themselves establish that Heisler's depression has ever substantially limited the major life activities she has asserted in this litigation. Nor does having a history of depression qualify Heisler as disabled. She has worked and lived independently throughout the twenty years that she has suffered from depression and has provided no evidence that any major life activities were substantially limited during that time. We do not mean to minimize the effects of Ms. Heisler's major depressive disorder. However, she has failed to establish that it qualifies her as disabled for purposes of the ADA.

Because Heisler has failed to establish that she was disabled under the ADA, Met Council had no obligation to make accommodations for her and we need not

11

address her claims that Met Council should have assigned her to a day-shift position as a reasonable accommodation.[5]

### C.    Retaliation Claim

Heisler argues that the district court erred in dismissing her retaliation claim because the court's dismissal was sua sponte as Met Council never raised the issue in its summary judgment motion. In dismissing Heisler's allegations of retaliation, the district court stated that she did not plead a retaliation claim in her complaint, make separate arguments in her summary judgment briefs as to the elements of a retaliation claim, or introduce evidence sufficient to allow a retaliation claim to go to a jury. However, we agree with Heisler that the district court erred in stating that she did not plead a claim of retaliation in her complaint. Counts III and IV of her complaint are entitled "Retaliation/Minnesota Human Rights Act" and "Retaliation/Americans with Disabilities Act" respectively. The complaint further alleges that Met Council

> retaliated against [her] for her accommodation request. [She] engaged in statutorily protected activity for which she is entitled to protections against reprisal from her employer. Termination of employment and failure to hire her in other positions was [sic] an adverse action. The timing of [her] requests to be placed in a different position and [Met Council's] denials and termination of her show that these adverse actions were causally connected to [her] protected activity.

(Id. at 5, ¶20.) These statements in Heisler's complaint easily meet the requirements for notice pleading of a retaliation claim.

---

[5]This same reasoning does not apply to Heisler's retaliation claim. Although Met Council had no obligation to accommodate Heisler because she was not disabled, the ADA prohibits an employer from retaliating against an employee who seeks an accommodation in good faith, even if it is subsequently determined that the employee is not disabled under the Act, as discussed in subpart C infra.

12

Met Council argues that even if Heisler stated a claim of retaliation, the district court's grant of summary judgment on the claim was not sua sponte, because Met Council moved for summary judgment on all of Heisler's claims. Even though Met Council asked the court to "grant its motion in its entirety and put an end to this lawsuit" in its Memorandum of Law in Support of Defendant's Motion for Summary Judgment (R. Doc. 27 at 24), nowhere in any of the summary judgment pleadings did Met Council discuss or even mention the retaliation claim. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Met Council's request that the court dismiss the lawsuit in its entirety, without specifically mentioning or arguing the retaliation claim, was insufficient to put the issue before the district court.

We have repeatedly held that in the Eighth Circuit, a district court commits reversible error when it grants summary judgment on an issue not raised or discussed by the parties. See Am. Red Cross v. Cmty. Blood Ctr. of the Ozarks, 257 F.3d 859, 863 (8th Cir. 2001) (reversing the grant of summary judgment on three issues not raised in the moving party's motion); Walker v. Mo. Dep't of Corr., 138 F.3d 740, 742 (8th Cir. 1998) (reversing summary judgment on ADA claim where district court based its decision on plaintiff's failure to establish an adverse employment action and the parties' summary judgment submissions discussed only the issue of whether plaintiff was a qualified individual with a disability). It is fundamentally unfair to the nonmoving party to require her to address issues not addressed by the moving party in anticipation that the district court might rely on some unidentified issue to grant the motion. See Williams v. City of St. Louis, 783 F.2d 114, 116 (8th Cir. 1986) ("[T]he District Court . . . should have provided plaintiffs with notice of its intention to consider the . . . issue and with a meaningful opportunity to address that issue.").

13

Met Council asserts that even if the retaliation claim was not properly raised in its summary judgment motion, summary judgment is appropriate because the claim is precluded as a matter of law if the district court is correct that Heisler is not a qualified individual with a disability. Met Council's premise is correct–it would be an exercise in futility and a waste of judicial resources to reverse a grant of summary judgment on an issue not properly raised in the summary judgment motion if the district court's findings on properly addressed issues foreclose the unraised issue. See Interco Inc. v. Nat'l Sur. Corp., 900 F.2d 1264, 1269 (8th Cir. 1990) (affirming district court's grant of summary judgment on claim not raised by the parties where the claim was dependant on a claim properly dismissed by the court). However, Met Council is mistaken that the district court's conclusion that Heisler was not a qualified individual with a disability necessarily precludes the retaliation claim. "An individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA," Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 786 (3d Cir. 1998) (internal quotations omitted), as long as she had a good faith belief that the requested accommodation was appropriate, see Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003). There is no indication in the record or by the parties that Heisler's request for day-shift hours was not made in a good faith belief that it was an appropriate accommodation under the ADA.

Thus, as long as Heisler properly pleaded a retaliation claim, the district court should not have granted summary judgment on that claim. To state a claim of retaliation under the ADA, Heisler must establish that she engaged in a protected activity, suffered an adverse employment action, and that there is a causal connection between the two. Scroggins v. Univ. of Minn., 221 F.3d 1042, 1044 (8th Cir. 2000) (ADA).[6] See also 42 U.S.C. § 12203(a). Heisler claimed that Met Council retaliated

---

[6]These same elements are required to establish a retaliation claim under the MHRA. See Minn. Stat. Ann. § 363.03 subdiv. 7; Thorn v. Amalgamated Transit Union, 305 F.3d 826, 831 (8th Cir. 2002).

against her after she requested an accommodation for her depression by refusing to hire her for a day-shift position and eventually terminating her. Requesting an accommodation is a protected activity, see Shellenberger, 318 F.3d at 191, and termination is certainly an adverse employment action. Heisler claimed that the temporal proximity of the events establishes the causal connection. "Because [Heisler] alleged all of the elements of a prima facie case but did not have sufficient notice that the [claim] was in issue, we conclude that the district court's ruling as to the [retaliation] claim was procedurally improper." Walker, 138 F.3d at 742.

Met Council's argument that there is no evidence of retaliation demonstrates precisely why summary judgment must be reversed on the retaliation claim. Heisler did not get a chance to develop the record or point out material issues of fact contained in the record related to the elements of her retaliation claim because she was not on notice that the retaliation claim was at issue in the summary judgment proceedings. It may well be that Heisler will be unable to establish a genuine issue of fact regarding the retaliation claim, but she must at least be given a chance to try.

III.

The district court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

15