# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-2467

_____

First Union National Bank, as Trustee     *
of the Southeast Timber Leasing          *
Statutory Trust,                          *
                                       *
            Plaintiff,             *
                                         *
    v.                              *
                                         *
Pictet Overseas Trust Corp., Ltd., as    *
Trustee of the Henrietta Y. Jones Trust,   *   Appeal from the United States
                                         *   District Court for the
           Defendant.          *   Western District of Arkansas.
                                         *
    _____    *
                                         *
Pictet Overseas Trust Corp., Ltd., as    *
Trustee of the Henrietta Y. Jones Trust,   *
                                         *
           Counter Claimant/     *
           Appellant,          *
                                         *
    v.                              *
                                         *
First Union National Bank, as Trustee     *
of the Southeast Timber Leasing          *
Statutory Trust,                          *
                                       *
           Counter Defendant/    *
           Appellee.           *

_____

Submitted: April 14, 2003

Filed: December 9, 2003
_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Pictet Overseas Trust Corporation, Ltd., (Pictet), trustee of the Henrietta Y. Jones Trust (Jones Trust), appeals the district court's ruling that Pictet's counterclaims for breach of fiduciary duty and conversion were moot in light of the earlier entry of judgment in Pictet's favor under Arkansas statutes furnishing appraisal rights to dissenting corporate shareholders. We reverse and remand for further proceedings.

I.

The Jones Trust owned approximately six percent of First Land and Timber Corporation (FLT) when FLT proposed a corporate merger structured to shift ownership of FLT to an acquisition company. The acquisition company was itself owned by a trust administered by the Appellee, First Union National Bank (First Union).[1] The merger agreement provided that FLT shareholders would receive $65,000,000 total consideration, or about $631.00 per share, for relinquishing FLT ownership. The total consideration was subject to certain adjustments and a 5% holdback escrowed to pay claims and expenses incidental to the merger. Any remaining holdback was scheduled for distribution to non-dissenting former FLT

_____

[1]First Union is now Wachovia Bank.

-2-

shareholders in two payments after the merger, one on December 31, 1998; the second on December 31, 1999.

Under the proposed merger terms, the Jones Trust would have received approximately $3.7 million for its 6,000 FLT shares. Not satisfied with this figure, Pictet dissented from the proposed merger. It delivered written notice of dissent to FLT and voted against the proposed transaction.

Over Pictet's dissent, a majority of shareholders approved the merger, which occurred on June 24, 1998. Shortly thereafter, FLT merged yet again. Its assets ultimately became part of the Southeast Timber Leasing Statutory Trust (Southeast Trust), a business trust organized under Connecticut law, see Conn. Gen. Stat. Ann. §§ 34-500 *et seq*. (West 2003), and administered by First Union as trustee for the benefit of First American Acquisitions, Inc. (First American).

After the mergers, non-dissenting former FLT shareholders received payment for 95% of their pro-rata share of the merger consideration. The remaining 5% holdback, an amount slightly over $3 million, was held in escrow by Sun Trust Bank in Atlanta, Georgia. First Union also deposited $3.7 million, an amount equal to Pictet's pro-rata share of the merger consideration at the merger agreement price, into a passbook account with Golden Gate Bank in San Francisco, California.

On July 1, 1998, First Union notified Pictet that shareholders had approved the merger and advised Pictet of the procedures available for demanding the value of its shares. By letter dated July 13, 1998, Pictet demanded payment and, three days later, deposited its share certificates with First Union. Although Arkansas law mandated that Pictet receive payment for the estimated fair value of its dissenting shares, see Ark. Code. Ann. § 4-27-1325 (Michie 2001), First Union did not pay Pictet, so Pictet again demanded payment on October 30, 1998, estimating the fair value of its shares at approximately $5.1 million plus interest.

First Union did not immediately respond, and meanwhile, on December 31, 1998, 2.5% of the holdback in Sun Trust Bank was distributed to non-dissenting shareholders. A week later, First Union offered to settle Pictet's claim on the same terms provided in the original merger agreement (i.e., it offered to tender 97.5% of $3.7 million to Pictet plus interest, and stated that it would tender the remaining 2.5% holdback on December 30, 1999, less deductions for claims under the merger agreement). Pictet rejected the offer and reiterated its demand for $5.1 million plus interest.

On March 15, 1999, First Union filed suit against Pictet in the Chancery Court of Union County, Arkansas, to determine the fair value of Pictet's shares. Pictet then removed the case to federal district court based upon diversity and filed a counterclaim alleging that First Union's untimely lawsuit fixed the value of Pictet's shares at $5.1 million plus interest. See Ark. Code. Ann. § 4-27-1325 (Michie 2001) (providing that corporation's failure to seek judicial appraisal within sixty days obligates corporation to pay dissenter "the amount demanded"). While the claims were pending, the remaining holdback monies held in Sun Trust Bank were distributed to non-dissenting shareholders. In addition, at First American's directions, First Union financed legal expenses and some of First American's obligations to third parties out of the funds in Golden Gate Bank.

On May 8, 2000, and pursuant to a consent order, First Union tendered $3.7 million to Pictet from the Golden Gate Bank account, an amount that included no interest. First Union also agreed not to disburse any additional funds from the Golden Gate Bank account while litigation with Pictet was pending. That June, however, Pictet discovered that only about $300,000 remained in the corpus of Southeast Trust, most of it in the Golden Gate Bank account. Pictet then amended its counterclaims, adding claims that First Union had converted funds from Southeast Trust and breached a fiduciary duty to Pictet by disbursing Southeast Trust's monies to amounts below those necessary to fully compensate Pictet.

-4-

Pictet sought summary judgment on its statutory valuation claim, and First Union sought summary judgment on Pictet's claims for breach of fiduciary duty and conversion. Noting First Union's delay and its "gross failure to comply with statutory procedures," the district court granted Pictet's motion for summary judgment and awarded Pictet $5.1 million plus interest and costs from the assets of Southeast Trust. In a second order, the district court determined the appropriate interest due and dismissed Pictet's remaining counterclaims as moot. Notwithstanding its observation that First Union's delay in paying Pictet "rises towards conversion," the district court concluded that any claim of conversion "evaporates for lack of damage in the face of the interest awarded pursuant to the statutory requirement." Dist. Ct. Order of March 15, 2002, at 1. The district court also found that First Union "owed a duty to Pictet," but concluded that "any damage in excess of the interest awarded [on Pictet's statutory valuation claim] above would be duplicative and contrary to equitable principles." Id.

The district court denied Pictet's motion for reconsideration of the dismissal of its remaining counterclaims, stating that the only parties to the action were Pictet, in its representative capacity for the Jones Trust, and First Union, in its representative capacity for Southeast Trust. The court stated: "To the extent Pictet continues to urge that First Union Bank breached its fiduciary duty to [Jones Trust], Pictet is seen to urge that First Union *standing in its own shoes* has injured [Jones Trust]. That is not the subject of this action because those are not the parties to this action." Dist. Ct. Order of April 24, 2002, at 1 (emphasis in original).

## II.

Neither party challenges the district court's judgment that Southeast Trust must pay Pictet $5.1 million plus interest, so the only issue before us is the district court's disposition of Pictet's counterclaims for breach of fiduciary duty and conversion. The district court's denial of these claims as moot is a matter we review de novo.

Midwest Farmworker Employment and Training, Inc. v. United States Dept. of Labor, 200 F.3d 1198, 1201 (8th Cir. 2000).

The district court's mootness finding turns on its conclusion about the appropriate parties to this lawsuit. If First Union is a party only as a representative of Southeast Trust, as the district court believed, then a damages award on Pictet's claims for breach of fiduciary duty and conversion might indeed duplicate the judgment on Pictet's statutory valuation claim.[2] Seizing on this observation, First Union now contends that Pictet never sued First Union "individually," but only in its "official" or representative capacity as trustee of Southeast Trust. We disagree.

Historically, a trust estate was not a juridical entity, hence the observation that "a suit by strangers to the trust must be brought against the trustees thereof individually and not against the fictional entity." Yonce v. Miners Mem'l Hosp. Ass'n, 161 F.Supp. 178, 188 (W.D.Va. 1958); Richardson v. Klaesson, 210 F.3d 811, 813 (8th Cir. 2000). Moreover, at common law, trustees were personally liable for contracts entered and torts committed during administration of the trust, and the important question -- at least from the trustee's perspective -- was the ability to receive indemnification from trust assets. See Richardson, 210 F.3d at 813 (noting that "the usual rule, absent a statute, is that a trust is not liable for the torts of its trustees, even torts committed in the course of the trust's administration."); Betts v. Hackathorn, 252 S.W. 602, 604 (Ark. 1923) (finding that the trustee's personal liability is the creditor's guarantee); Restatement (Second) of Trusts §§ 261, 265 (1959).

---

[2]This is so because a judgment would be against only one party acting in one capacity, or alternatively, only against trust assets, and the district court had already concluded that all Pictet was equitably entitled to was the $5.1 million value of its shares plus applicable interest and costs from trust assets.

Over time, some courts relaxed these rules and permitted suits against trustees in a "representative capacity" to reach trust assets directly. See Jerome J. Curtis, The Transmogrification of the American Trust; 31 Real Prop., Prob. & Trust J. 251, 277-279 (1996); Yonce, 161 F.Supp. at 188 (noting that where trustee must carry on business transactions, "the trust estate can only be reached by the injured party suing the trustees in their representative capacity."). Some states also now recognize the so-called "business" or "Massachusetts" trust. See, e.g., Betts, 252 S.W. at 604-05. Unlike traditional trusts, this form of business organization gives the trust powers to sue and be sued in its own name and usually subjects trust assets to execution and attachment in the same manner as corporate assets. See, e.g., Conn. Gen. Stat. Ann. § 34-502b (West 2003); Town of Hull v. Tong, 442 N.E.2d 427, 428 (Mass. App. Ct. 1982) (applying Massachusetts statutes).

Neither party has asserted that common law capacity rules apply here, and Pictet does not challenge the finding that the $5.1 million judgment on Pictet's statutory valuation claim is against "assets of the corpus of [Southeast Trust]." D. Ct. Order of March 15, 2002, at 8-9. Even assuming, however, that applicable law works a distinction between suits against the trustee operating individually and as representative only, we conclude that Pictet's amended counterclaims make sufficiently clear that Pictet was pursuing First Union individually for breach of fiduciary duty and conversion.

Pictet added its counterclaims for breach of fiduciary duty and conversion after learning that First Union had disbursed Southeast Trust assets below amounts necessary to satisfy Pictet's statutory valuation claim. The amended counterclaims state that "First Union, as trustee for [Southeast Trust] and successor to FLT, stood in a fiduciary position with Pictet" and allowed distribution of Southeast Trust assets to Pictet's detriment, and further, that "the [Southeast Trust] and/or [First Union] ha[ve] converted the funds . . . ." (App. at 158-59, amended counterclaims at ¶¶ 36, 37, 43). We do not believe addition of the words "individually" in this case would

have substantially changed the meaning or clarity of the pleadings. Nor do we believe, given the facts alleged, that Pictet's naming of First Union "as trustee of [Southeast Trust]" invoked a presumption that Pictet was not suing First Union individually. See Fed. R. Civ. P. 9(a) (specifying that parties need not plead capacity to sue or be sued).

We recognize that some courts read Rule 13 of the Federal Rules of Civil Procedure to prevent a defendant from counterclaiming against a plaintiff in a capacity different from the one in which the plaintiff initiated the lawsuit. See e.g., Banco Nacional de Cuba v. Chase Manahattan Bank, 658 F.2d 875, 885 (2d Cir. 1981) (concluding that plaintiff in its individual capacity was not "opposing party" within the meaning of Rule 13). No one argued this point, and in any event, the "opposing party" restriction is subject to exceptions, including considerations of judicial economy and waiver. Both apply here.

First, litigating Pictet's individual capacity counterclaims in this proceeding is efficient because it avoids a second lawsuit and ensures decision by a district court already familiar with the facts. See Blanchard v. Katz, 117 F.R.D. 527, 529 (S.D.N.Y. 1987) (noting a counterclaim will be allowed "if principles of equity and judicial economy support such a counterclaim."). Second, we conclude that a plaintiff submits its alternate capacity to the jurisdiction of the court if it defends the counterclaim on the merits and fails to proffer a "different capacity" defense. See Pioche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co., 206 F.2d 336, 337 (9th Cir. 1953) (finding waiver for failure to raise capacity issue by motion or in reply to counterclaim; Ivey v. Daus, 181 F. Supp. 793, 797 (D.C.N.Y. 1960); see also Fed R. Civ. P. 9(a) (specifying that capacity issues must be raised by "specific negative averment . . . ."); cf. Rhodes Inc. v. Morrow, 937 F. Supp. 1202, 1208 (M.D.N.C. 1996) (characterizing capacity defense as one for failure to state a claim). Here, First Union responded to Pictet's counterclaims on the merits and never raised or argued a capacity defense in the proceedings below.

As we read the record, the district court ruled <u>sua sponte</u> that First Union was not an individual party to the lawsuit and found that Pictet's counterclaims were thus moot. We conclude that the court should not have so ruled. A district court should refrain from considering and crediting nonjurisdictional defenses not raised by the parties. <u>Cf.</u> <u>Heisler v. Metro. Council</u>, 339 F.3d 622, 631 (8th Cir. 2003) (citing cases involving grants of summary judgment on issues not raised). As <u>Heisler</u> notes, "it is fundamentally unfair to the nonmoving party to require her to address issues not addressed by the moving party in anticipation that the district court might rely on some unidentified issue to grant the motion." <u>Id.</u> (citing <u>Williams v. City of St. Louis</u>, 783 F.2d 114, 116 (8th Cir. 1986)). Even if we construe the capacity issue as a defense asserting failure to state a claim, <u>see</u> <u>Rhodes Inc.</u>, 937 F. Supp. at 1208, First Union should have presented the argument somewhere in the proceedings below.

Because Pictet brought suit against First Union individually and First Union has waived any argument to the contrary, Pictet's counterclaims are not moot. Mootness applies in cases "in which one or both of the parties plainly lack a continuing interest, as when the parties have settled or a plaintiff pursuing a nonsurviving claim has died." <u>Friends of the Earth v. Laidlaw Environ. Servs.</u>, 528 U.S. 167, 189 (2000). The Supreme Court has written that "[a]s long as the parties have a concrete interest in the outcome of the litigation, the case is not moot notwithstanding the size of the dispute." <u>Firefighters Local Union No. 1784 v. Stotts</u>, 467 U.S. 561, 571 (1984) (<u>citing</u> <u>Powell v. McCormack</u>, 395 U.S. 486, 496-98 (1969)). Here, the appropriate value of Pictet's shares and the applicable interest thereon is distinct from whether First Union is liable for mismanaging or converting the proceeds from the sale of those shares so as to interfere with Pictet's ability to collect appropriate value. Pictet has a continuing interest in resolution of its counterclaims because a favorable judgment on either of the counterclaims would render First Union liable for amounts Pictet cannot collect from Southeast Trust by virtue of First Union's alleged wrongdoing.

Our finding that Pictet's counterclaims are not moot expresses no opinion on the merits of those claims, which First Union urges us to decide on appeal. This we decline to do, for we do not normally consider issues which the district court did not rule upon, Mark v. Nix, 983 F.2d 138, 140 (8th Cir. 1993); EEOC v. Home of Economy, Inc., 712 F.2d 356, 358 (8th Cir. 1983), and we see no reason to depart from that rule here. At the very least, Pictet's conversion claim may involve mixed questions of law and fact that the district court is in a better position to adjudicate. Accordingly, the district court's judgment that Pictet's counterclaims for breach of fiduciary duty and conversion are moot is reversed, and the matter is remanded to the district court for further proceedings consistent with the views set forth in this opinion.

_____