# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3409

_____

Donald Stephens

*Plaintiff - Appellant*

v.

United States Environmental Services LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: November 19, 2025
Filed: February 12, 2026

_____

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Donald Stephens worked as an "Operator" for United States Environmental Services, LLC ("USES"), which required him to maintain an active Commercial Driver's License ("CDL"). During a Saturday morning shift, Stephens initially refused to perform work usually done by technicians and disclosed to his supervisor that he had a heart condition. In response, USES required Stephens to receive a medical examination, which resulted in a 45-day hold on his CDL. After USES

denied Stephens's request to perform work that did not require a CDL during the 45-day hold, Stephens resigned. Stephens brought this action, alleging disability discrimination and retaliation.[1] The district court[2] granted USES summary judgment because it found Stephens was not disabled and did not engage in protected activity. We affirm.

## I. BACKGROUND

On February 27, 2021, Stephens reported to a worksite for a Saturday morning shift to clean out two underground tanks. When he arrived, only the worksite supervisor, Terry, was present. Terry told Stephens that a technician and two safety workers were coming, but after Stephens finished setting up his truck for the technician, they still had not arrived. Terry became impatient and asked Stephens to start cleaning out the first tank. Stephens declined because he was a truck operator and not a technician. Stephens also raised numerous safety concerns, such as the lack of safety workers and safety equipment—including hazmat suits, harnesses, air monitors, and respirators.

Eventually, the safety workers arrived. They encouraged Stephens to clean out the tank. Still, Stephens declined. Stephens continued to express his concern over the lack of safety equipment, and he informed them that he had a heart condition he did not want to aggravate. With Stephens refusing to clean the tank, Terry cleaned the first tank himself. Terry became too tired to clean the second tank and demanded Stephens clean it. Terry threatened to get Stephens fired if he refused to clean the second tank. This time, Stephens capitulated and cleaned the second tank.

---

[1]Stephens did not specifically list retaliation as a separate cause of action in his complaint, but the district court addressed retaliation "to the extent [Stephens] attempted to do so." We do the same.

[2]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

The following Monday, USES requested Stephens be examined by Nurse Sarah Baxter due to his reported heart condition. During the examination, Nurse Baxter determined Stephens's electrocardiogram ("EKG") was abnormal and placed a 45-day medical hold on his CDL. Nurse Baxter, however, found Stephens was medically and physically fit to perform all other work. Stephens's cardiologist, Dr. Mangaraju Chakka, reviewed the same EKG and determined it was normal for Stephens. Dr. Chakka's findings were communicated to Nurse Baxter, and in response, Nurse Baxter requested Dr. Chakka perform a stress test on Stephens before lifting the hold.

Stephens returned to work the day after completing his medical examination. USES, however, did not let him work due to the hold on his CDL. Stephens requested to perform other, non-driving work based on Nurse Baxter's clearance, but USES denied his request and recommended he seek short-term disability. Two weeks later, Stephens submitted to a stress test. Dr. Chakka determined the stress test was unremarkable and cleared Stephens to be a commercial driver. Stephens, however, resigned at the end of the 45-day hold because he did not feel comfortable working at USES after they denied his request to perform other work during the 45-day hold.

Stephens brought this action against USES, asserting claims under the Americans with Disabilities Act ("ADA") and the Arkansas Civil Rights Act ("ACRA")[3] and for violations of the Fair Labor Standards Act ("FLSA"). The district court dismissed Stephens's FLSA claim and granted USES summary judgment on Stephens's discrimination claim. The district court found that Stephens was not disabled because his heart condition did not limit a major life activity and

---

[3]"[W]e analyze a disability claim presented under the ACRA under the same principles employed in analyzing claims under the" ADA. Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002).

-3-

USES did not perceive Stephens to have a disability.[4]  The district court also determined that Stephens did not engage in protected activity to support a retaliation claim.  Stephens appeals the district court's grant of summary judgment as to his disability discrimination and retaliation claims.

## II.  DISCUSSION

We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to Stephens and drawing all reasonable inferences in his favor.  Segal v. Metro. Council, 29 F.4th 399, 403 (8th Cir. 2022).  Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Lacey v. Norac, Inc., 932 F.3d 657, 660 (8th Cir. 2019) (quotation omitted).

### A.  Disability Discrimination

Under the ADA, a person is entitled to protection if he is "disabled." Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 903 (8th Cir. 2010).  To show he was disabled, Stephens needed to demonstrate "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A). The parties agree Stephens suffers a physical impairment: atrial fibrillation.  They disagree about whether his atrial fibrillation substantially limits a major life activity.

"The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).  Still, "not every impairment will constitute a disability."  29 C.F.R. § 1630.2(j)(1)(ii).  Stephens thus cannot simply rely on his diagnosis.  Nyrop

---

[4]Stephens does not argue the district court erred in finding USES did not regard him as disabled, and, therefore, he has abandoned his "regarded as disabled" claim on appeal.  Griffith v. City of Des Moines, 387 F.3d 733, 739 (8th Cir. 2004) (deeming issues not briefed on appeal to be abandoned).

v. Indep. Sch. Dist. No. 11, 616 F.3d 728, 734 (8th Cir. 2010).  Rather, Stephens must "prove a disability by offering evidence that the extent of the limitation caused by the[] impairment in terms of [his] own experience is substantial."  Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm., 370 F.3d 763, 769 (8th Cir. 2004) (cleaned up).

Stephens asserts his atrial fibrillation substantially limits the major life activities of breathing as well as respiratory, circulatory, and cardiovascular function.[5]   29 C.F.R. § 1630.2(i)(1)(i–ii).  Specifically, Stephens argues atrial fibrillation can cause dyspnea, i.e., shortness of breath, and syncope episodes, i.e., loss of consciousness caused by inadequate blood flow.  But Stephens cannot rely on "generic 'evidence of a medical diagnosis of an impairment.'"  Kirkeberg, 619 F.3d at 903 (quoting Ristrom, 370 F.3d at 769).  Instead, Stephens "must present evidence showing the degree to which *he personally* is limited by his condition[]."  Id.  Stephens failed to do so.

The record shows Stephens's atrial fibrillation did not substantially limit his major life activities.  Although Dr. Chakka noted that atrial fibrillation can cause dyspnea or syncope episodes, he testified that Stephens experienced neither condition around the time of the incident.  Nurse Baxter similarly testified that Stephens did not have any problems breathing or have any syncope episodes.  Nurse Baxter also found Stephens was medically and physically fit to perform work that did not require a CDL.  While Nurse Baxter placed a hold on Stephens's CDL because she believed the EKG showed an inferior ischemia, i.e., a lack of oxygen to the heart, Dr. Chakka clarified that Stephens's EKG was normal for him and was not significant.  Dr. Chakka also found the results of Stephens's stress test were "unremarkable," and he explained that Stephens was "doing very well."  Because

_____

[5]Stephens appeared to argue to the district court that driving was a major life activity.  On appeal, Stephens clarifies that he has never contended that driving was a major life activity that qualified him as being disabled, but the impact of his breathing and cardiovascular function has a significant impact on his driving.  Accordingly, we need not consider whether driving is itself a major life activity.

Stephens did not show he was disabled under the ADA, summary judgment was appropriate on his disability discrimination claim.

For the first time on appeal, Stephens argues his atrial fibrillation was in remission after his ablation procedure in 2015. 42 U.S.C. § 12102(4)(D) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."). We do not typically consider arguments raised for the first time on appeal. Lackie Drug Store, Inc. v. OptumRx, Inc., 143 F.4th 985, 997 n.7 (8th Cir. 2025) (quotation omitted). We "have discretion to consider a newly raised argument 'if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result.'" Combs v. The Cordish Companies, Inc., 862 F.3d 671, 678–79 (8th Cir. 2017) (quoting United States v. Hirani, 824 F.3d 741, 751 (8th Cir. 2016)). Stephens's argument requires further factual development of his pre-ablation condition. During his deposition, Dr. Chakka briefly mentioned that Stephens had episodes of rapid heart rate before his ablation procedure. But the record lacks detail regarding those episodes and is devoid of other facts suggesting his atrial fibrillation substantially limited any major life activity before the ablation procedure. Further, Stephens did not argue that manifest injustice would result. For these reasons, we decline to consider his argument raised for the first time.

## B. ADA Retaliation

For an ADA retaliation claim, the plaintiff "must establish that she engaged in protected activity, suffered an adverse employment action, and there is a causal connection between the two." Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003). In Heisler, this Court held that "[r]equesting an accommodation is protected activity," and, therefore, "[a]n individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA, as long as she had a good faith belief that the requested accommodation was appropriate." Id. (quotation omitted); see also Kirkeberg, 619 F.3d at 908 ("[W]e are bound by Heisler to conclude that making such a request is protected activity for

purposes of 42 U.S.C. § 12203(a).").  "A reasonable accommodation is one which enables an individual with a disability to perform the essential functions of the position."  Hatchett v. Philander Smith Coll., 251 F.3d 670, 675 (8th Cir. 2001).

Stephens argues his refusal to clean the underground tank without a respirator was a request for a reasonable accommodation, but the record shows it was actually a request for general safety equipment available to all employees.  Stephens initially requested a respirator when he was raising general safety concerns, including the lack of hazmat suits, harnesses, and safety workers.  Only after the safety workers arrived and encouraged Stephens to clean the tank without the proper safety gear did Stephens mention his heart condition.  Even then, he did not say his heart condition required him to use a respirator.  Consistent with Stephens's actions, Dr. Chakka testified that he had not instructed Stephens to avoid confined spaces unless he had a respirator.  Stephens further clarified that he requested the respirator because technicians "were supposed to have respirators," and "that's all [he] knew to ask for," not because of his heart condition.  Stephens knew to ask for a respirator because he had previously seen technicians using them.  As Stephens points out, OSHA regulations require certain employers to provide respirators to all employees, not just disabled ones.  See 29 C.F.R. § 1910.134.  Because Stephens failed to show he engaged in protected activity, the district court did not err in granting USES summary judgment on Stephens's retaliation claim.

## III.  CONCLUSION

We affirm the judgement of the district court.

_____