Steven NUZUM, Sr., Plaintiff,

v.

**OZARK AUTOMOTIVE DISTRIBUTORS, INC., d/b/a/ O'Reilly Auto Parts, Defendant.**

No. 4:03–CV–40148.

United States District Court, S.D. Iowa, Central Division.

June 10, 2004.

Mark D. Sherinian, Sherinian & Walker PC, West Des Moines, IA, for Plaintiff.

Elizabeth Gregg Kennedy, Nathan J. Overberg, Ahlers & Cooney PC, Des Moines, IA, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (Clerk's No. 17). This motion seeks dismissal of all counts alleged in Plaintiff's Complaint. Attorney for the Plaintiff is Mark Sherinian; attorneys for the Defendant are Elizabeth Gregg Kennedy and Nathan J. Overberg. An oral hearing was held on the motion on Friday, May 28, 2004. The Court considers the motion fully submitted and ready for ruling.

## PROCEDURAL HISTORY

Plaintiff, Steven P. Nuzum, Sr. ("Nuzum"), commenced this action against Defendant, Ozark Automotive Distributors, Inc., d/b/a O'Reilly Auto Parts ("Ozark" or "the Company"), in the United States District Court for the Southern District of Iowa, Central Division, on March 19, 2003. Nuzum's Complaint asserts two claims against Defendant. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, as this case arises in part under the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. §§ 12101 et seq. The Court has jurisdiction over Plaintiff's claim brought pursuant to the Iowa Civil Rights Act ("ICRA"), Iowa Code ch. 216, pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

The lawsuit arises out of alleged discrimination based on disability, up to and including the termination of Plaintiff's employment. On March 1, 2004, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Defendant seeks summary judgment on both counts asserted by Nuzum in his Complaint. Nuzum opposes this motion.

## BACKGROUND FACTS

Nuzum was employed as an order picker at Ozark's Des Moines Distribution Center from May 10, 1999, through April 18, 2002. The order picker position required Plaintiff to review an order ticket from a particular store, remove the auto parts listed on the ticket from the stock bins, place the parts in a plastic tote until the tote is full or the order completed, deliver the tote to the conveyor, and place the tote on the conveyer.[1] This position required Plaintiff to constantly lift and carry auto-motive parts, individually and collectively in totes, weighing up to 60 pounds.

On October 7, 1999, Nuzum was promoted to lead order picker.[2] He received a corresponding raise in pay. In October 2000, Nuzum was returned to his regular order picker duties.[3] There was no decrease in pay at this time.

On or about June 8, 2000, Nuzum was diagnosed with tendinitis, or as it is more commonly known, "tennis elbow", in his left elbow. Nuzum never had any issues with his right arm or elbow. From June 8, 2000, through his separation from employment in April 2002, the pain in his left elbow would fluctuate. When the tendini-

---

1. Hereinafter, this process will be referred to as "picking".

2. This position no longer exists, having been done away with prior to October 2001. Nuzum asserts that the lead picker position was merely re-titled and now exists as the Assistant Supervisor position. Ozark disagrees. Indeed, there are essential differences in that the Assistant Supervisor position is salaried and exempt, whereas the lead picker position was hourly, and the Assistant Supervisor oversees many more workers than did the former lead picker position.

3. Ozark contends this was a demotion based on a supervisor's observations and conclusion that Nuzum was not adequately managing the other workers. Nuzum disputes this characterization and points to the fact that his pay rate remained stable when he returned to his regular order picker duties.

tis would flare up, Nuzum would obtain medical treatment consisting of physical therapy, over-the-counter wrist and elbow braces, pain reliever prescriptions, and pain reliever injections.

Because the tendinitis caused Nuzum severe pain, he was unable to meet the 60–pound lifting requirement of the order picker position. On occasion, Nuzum received temporary restrictions limiting his ability to lift, push, or pull certain amounts of weight. When Nuzum was on these temporary restrictions, Ozark provided him with temporary, modified, light-duty assignments consistent with the restrictions and Ozark's workers' compensation policy. For example, on some occasions, these temporary light-duty assignments consisted of picking only auto belts, cleaning totes, sweeping, and other janitorial work, or some combination thereof.

On February 19, 2002, Nuzum was given permanent restrictions by his physician. These restrictions limited him to lifting constantly up to 10 pounds, frequently up to 20 pounds, and occasionally up to 40 pounds.[4] On April 2, 2002, it was determined that Nuzum had reached maximum medical improvement ("MMI"), meaning his injury would not improve and his lifting restrictions were permanent. Under Ozark's workers' compensation policy, once Nuzum reached MMI he was no longer eligible for temporary, modified, light-duty assignments. It is undisputed by both parties that Nuzum's permanent restrictions prevented him from performing the essential functions of his regular order picker position.

Ozark received notice on April 4, 2002, that Nuzum had reached MMI and that his permanent restrictions remained unchanged. At this time, Nuzum met with Julie Carroll, Des Moines Distribution Center Manager, and Mary J. Leto, Human Resources Supervisor, to discuss the situation. Because he was unable to perform the essential functions of his regular position, and because he was no longer eligible for temporary light-duty assignments, Nuzum was presented with three options: (1) voluntary termination from the company effective immediately; (2) apply for Family and Medical Leave of Absence ("FMLA") for up to 12 weeks; or (3) try to find another position within Ozark for which he was qualified within 14 days of April 4, 2002. In a letter addressed to Ms. Leto dated April 5, 2002, Nuzum indicated he was selecting the 14–day, or third, option as he wanted another position in the Company for which he was qualified. According to Nuzum, he did not want to voluntarily terminate his employment. Nuzum further feared that if he exercised the option of taking FMLA leave, he would have to voluntarily resign at the end of the 12–week period if he was unable to find a job and that this would leave him ineligible for unemployment benefits.

During the 14–day period, there was a part-time security position open which Nuzum could perform within his permanent restrictions. Ozark indicated to Nuzum this position was available. Nuzum expressly refused to pursue this position, apparently because it was financially unacceptable. Nuzum suggested two other, specific accommodations in his April 5 letter: (1) make him a supervisor or lead order picker, or (2) allow him to only pick auto belts.[5] In addition, Nuzum stated he

---

**4.** These restrictions will be referred to throughout the Court's order. Rather than repeat the precise nature of the restrictions each time, the Court will refer to them as the lifting restrictions or lifting limitations.

**5.** In his brief resisting the present motion, Nuzum also intimates the Company could have positioned him in the carousel area of the warehouse where he would primarily be required to pick lighter items that were within his restrictions.

would accept any position within his restrictions if available. After the 14–day period expired without Nuzum identifying any open positions or accommodations that Ozark found reasonable and for which he was qualified, i.e., that were within his permanent restrictions, the Company terminated Nuzum's employment effective April 18, 2002.

## ANALYSIS

Nuzum alleges that Ozark, his former employer, terminated him because of a disability and/or failed to accommodate his disability in violation of the ADA and the ICRA.[6] Ozark contends these claims must be dismissed as a matter of law and brought its motion for summary judgment seeking that end.

### A. Standard for Summary Judgment

"[C]laims lacking merit may be dealt with through summary judgment under Rule 56." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be rendered

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). To avoid summary judgment, the nonmoving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *See Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wilson v. Southwestern Bell Tel. Co.*, 55 F.3d 399, 405 (8th Cir.1995); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (" 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' ") (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The nonmoving party must go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (finding that in employment discrimination cases, "the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action."). While the quantum of proof that must be produced to avoid summary judgment is not precisely measurable, it must be enough evidence for a reasonable jury to return a verdict in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

6. The Iowa Supreme Court applies the same analysis in interpreting the ICRA and "look[s] to the ADA and federal regulations implementing that act in developing standards under the ICRA for disability discrimination claims." *Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 60 (Iowa 1999) (citing *Bearshield v. John Morrell & Co.*, 570 N.W.2d 915, 918 (Iowa 1997), and *Probasco v. Iowa Civil Rights Comm'n*, 420 N.W.2d 432, 435–36 (Iowa 1988)). Because of the similarity of analysis, the Court will analyze Plaintiff's ADA and ICRA claims together. *See Crock v. Sears, Roebuck & Co.*, 261 F.Supp.2d 1101, 1113 n. 8 (S.D.Iowa 2003) (citations omitted) (analyzing ADA and ICRA claims together because the elements of liability are the same); *Barnes v. Northwest Iowa Health Ctr.*, 238 F.Supp.2d 1053, 1063–64 (N.D.Iowa 2002) (citations omitted) (same).

In considering a motion for summary judgment, the Court must view all of the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts presented. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996). The question before this Court is whether the record, when viewed in the light most favorable to the nonmoving party, shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995) (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548, and *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505).

■ The Eighth Circuit has repeatedly cautioned that summary judgment should rarely be granted in employment discrimination cases. *See Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir.1999); *Lynn v. Deaconess Med. Ctr.—West Campus*, 160 F.3d 484, 486 (8th Cir.1998); *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994). "Because employment discrimination cases frequently turn on inferences rather than direct evidence, the court must be particularly deferential to the party opposing summary judgment." *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir.1999); *see also Weiland v. El Kram, Inc.*, 233 F.Supp.2d 1142, 1149 (N.D.Iowa 2002) (citing *Crawford*, 37 F.3d at 1341).

■ The Eighth Circuit has qualified this principle by explaining that notwithstanding this consideration, summary judgment "is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir.2000); *see also Duffy v. Wolle*, 123 F.3d 1026, 1033 (8th Cir.1997) ("While 'summary judgment should seldom be granted in employment discrimination cases, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case.'") (quoting *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615–16 (8th Cir. 1997)). In short, "[s]ummary judgment is appropriate in employment discrimination cases only in 'those rare instances where there is no dispute of fact and where there exists only one conclusion.'" *Weiland*, 233 F.Supp.2d at 1149 (quoting *Johnson v. Minn. Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991)).

### B. Discrimination on the Basis of Disability

■ The ADA "prohibits employers from discriminating against qualified individuals with a disability on the basis of such disability". *E.E.O.C. v. Exel, Inc.*, 208 F.Supp.2d 1013, 1021 (E.D.Mo.2002) (citations omitted); *see also* 42 U.S.C. § 12112(a). "When there is no direct evidence of discrimination, discrimination claims are analyzed under the burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Pickens v. Soo Line Railroad Co.*, 264 F.3d 773, 777 (8th Cir.2001); *see, e.g., Raytheon Co. v. Hernandez*, 540 U.S. 44, 124 S.Ct. 513, 518 n. 3, 157 L.Ed.2d 357 (2003); *Longen v. Waterous Co.*, 347 F.3d 685, 688 (8th Cir.2003). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden to establish a prima facie case of discrimination on the basis of disability. *Raytheon Co.*, 124 S.Ct. at 518 n. 3. Ozark contends that Nuzum is unable to satisfy this initial bur-

den and that his claims must, as a result, be dismissed as a matter of law.

■■■ To establish a prima facie case of disability discrimination, Nuzum must show the following: "(1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability." *Epps v. City of Pine Lawn*, 353 F.3d 588, 591 (8th Cir.2003) (citing *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir.2003), and *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1087 (8th Cir. 2001)). Ozark asserts Nuzum is unable to establish the first two elements of a prima facie case. Summary judgment is appropriate if a plaintiff fails to establish any element of a prima facie case. *Kellogg v. Union Pac. R. Co.*, 233 F.3d 1083, 1086 (8th Cir.2000) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134–35 (8th Cir.1999) (en banc)).

### 1. Plaintiff's Disability Status Under the ADA

■■■ The ADA defines "disability" in the following three manners: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (gov-

erning the analysis of whether a limitation rises to the level of a disability). Nuzum contends he is actually disabled, and that if not, he was at least regarded as disabled.[7] Meanwhile, Ozark contends Nuzum does not have a disability under any of these definitions.

### a. Actually Disabled: Impairment Substantially Limiting Major Life Activities

■■■ Courts follow three steps in determining whether an individual is "actually disabled" under the ADA's definition of disability. *See generally Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). The Court must first ascertain whether the individual has a "physical or mental impairment" as defined by the ADA. *Id.* at 632, 118 S.Ct. 2196. The Court must then determine whether the activity that the individual's condition affects qualifies as a "major life activity" within the meaning of the Act. *Id.* at 637, 118 S.Ct. 2196. Finally, the Court must decide whether the individual's impairment "substantially limits" the plaintiff's ability to perform the identified major life activity. *Id.* at 639, 118 S.Ct. 2196.

### i. Physical or Mental Impairment

Under the ADA, a physical impairment is defined as a physiological disorder affecting a major body system. 29 C.F.R. § 1630.2(h)(1) (2003). Nuzum has been diagnosed with tendinitis or "tennis elbow" in his left arm. For purposes of the pres-

---

7. The definition that an individual with a record of a disability is disabled under the ADA is not at issue in the present case. *See* 42 U.S.C. § 12102(2)(B). A record of a disability means "a history of a mental or physical impairment that substantially limits one or more major life activities." *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir.1998). Plaintiff does not argue for this alternative. Indeed, there is no evidence of a record of a qualify-

ing disability until the recent tendinitis diagnosis. Moreover, if the medical records in the case do not establish the existence of an actual disability, neither will they establish the existence of a record of a disability. *See Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682, 687 (8th Cir.2003); *Gutridge*, 153 F.3d at 901–02. Therefore, the Court finds no need to discuss this alternative further.

ent motion, Ozark assumes that Plaintiff's tennis elbow constitutes a physical impairment.

Plaintiff's left elbow pain, both while employed at Ozark and after, has been treated with pain relievers, over-the-counter braces, and short periods of physical therapy. Nuzum was given a functional capacity examination shortly before his employment was terminated, which indicated he was capable of performing work with a "medium" level of physical demand, meaning he could perform average work as well as any light or sedentary work. The only permanent restriction Nuzum has received related to his tennis elbow is the lifting restrictions. Nuzum has testified that he can perform any activity as long as it within his restrictions. No structural cause for the pain has been identified, and surgery has not been suggested or required. In fact, the only medical prognosis in the record indicates that Nuzum's prognosis is excellent as long as he stays within the lifting restrictions.

As an initial matter, the Eighth Circuit has repeatedly held that a general lifting restriction imposed by a physician is insufficient on its own to render a plaintiff "disabled" for purposes of the ADA. *See Dropinski v. Douglas County*, 298 F.3d 704, 707 n. 2 (8th Cir.2002) (recognizing that "a general lifting restriction without more is insufficient to constitute a disability within the meaning of the ADA"); *Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir.2001) (same); *Brunko v. Mercy Hosp.*, 260 F.3d 939, 941 (8th Cir.2001) (same); *Mellon v. Fed. Express Corp.*, 239 F.3d 954, 957 (8th Cir.2001) (finding that a 15–pound lifting restriction did not constitute a disability); *Gutridge*, 153 F.3d at 901 (finding that a 45–pound lifting restriction did not constitute a disability); *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir.1997) (concluding that "a general lifting restriction imposed by a

physician, without more, is insufficient to constitute a disability within the meaning of the ADA") (citing *Helfter*, 115 F.3d at 617, and *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996)). The Eighth Circuit has found, however, that in some circumstances walking, standing, *lifting*, and twisting limitations are questions that should be presented to a jury, which will then determine, based on the facts, whether the claimant is disabled. *Webner v. Titan Distribution, Inc.*, 267 F.3d 828, (8th Cir.2001); *see also Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 948 (8th Cir.1999) (stating that lifting is a major life activity) (citing *Helfter*, 115 F.3d at 616).

### ii. Major Life Activities

The EEOC defines "major life activities" as "basic activities that the average person in the general population can perform with little or no difficulty," including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). This list is not meant to be exhaustive but rather is illustrative of the types of activities that qualify as major life activities. *See Bragdon*, 524 U.S. at 638–39, 118 S.Ct. 2196. In an ADA case, "bald assertions that one is limited in a major life activity are insufficient to withstand summary judgment." *Heisler v. Metro. Council*, 339 F.3d 622, 628 (8th Cir.2003) (citing *Helfter*, 115 F.3d at 616).

The Supreme Court has held that in order for an activity to qualify as a major life activity, it must be of central importance to most people's daily lives. *Toyota Motor Mfg.*, 534 U.S. at 197, 122 S.Ct. 681. In addition, the Eighth Circuit explained that "[m]ajor life activities do not include those activities that, although important to the individual plaintiff, are

not significant within the meaning of the ADA." *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1027 (8th Cir.1999).

██ Nuzum claims that his left elbow tendinitis affects his ability to mow the lawn, do outside chores, do some household chores involving lifting, work on cars, coach youth sports, throw baseballs and footballs, shoot basketballs, and drive a car with a manual transmission. He also contends that he is unable to hug his wife as tightly as he formerly could. While most of these activities are of import to Nuzum, the Court cannot find they constitute major life activities within the meaning of the Act. Nuzum further asserts he is unable to lift, sleep, and work, all activities considered major life activities under some circumstances.

Courts have determined that mowing the lawn, doing yard work, and performing other unidentified outside chores are not considered major life activities. *See Toyota Motor Mfg.,* 534 U.S. at 202, 122 S.Ct. 681 (noting that gardening is not a major life activity); *Moore v. J.B. Hunt Transport, Inc.,* 221 F.3d 944, 951 (7th Cir.2000) (finding argument that mowing the lawn is a major life activity would not be meritorious); *Weber v. Strippit, Inc.,* 186 F.3d 907, 914 (8th Cir.1999) (finding shoveling snow, gardening, and mowing the lawn are not major life activities); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 643 (2d Cir.1998) (finding that doing yard work is not a major life activity); *Soler v. Tyco Elec., Inc.,* 268 F.Supp.2d 97, 105 (D.P.R. 2003) (holding that "taking care of backyard" is not a major life activity); *Ruggles v. Keebler Co.,* 224 F.Supp.2d 1295, 1301 (D.Kan.2002) (concluding that trimming trees is not a major life activity).

Likewise, courts have found that working on cars as a hobby or for personal maintenance is not considered a major life activity. *See Colwell,* 158 F.3d at 643; *see also Moore,* 221 F.3d at 951 (finding that restoring cars is not a major life activity); *Soler,* 268 F.Supp.2d at 105 (noting that washing a car is not a major life activity).

Nuzum also claims that his elbow pain affects his ability to throw a baseball and football and to shoot basketballs, thereby affecting his ability to coach youth sports. While he still coaches and can still throw the balls, he is now limited in that ability. As an initial matter, these sporting activities are not considered by the courts to constitute major life activities. *See Jones v. Roadway Express, Inc.,* 2003 WL 76868, at *6 (N.D.Ill. Jan 8, 2003) (holding that restricted involvement in coaching sports does not constitute a substantial limitation on a major life activity); *see also Weber,* 186 F.3d at 914 (finding that playing tennis, fishing, and hiking are not major life activities); *Campetti v. Career Educ. Corp.,* 2003 WL 21961438, at *12 (E.D.Pa. June 25, 2003) (finding that playing basketball is not a major life activity); *Soler,* 268 F.Supp.2d at 105 (finding that playing with children is not a major life activity); *Miller v. Wells Dairy, Inc.,* 252 F.Supp.2d 799, 808 (N.D.Iowa 2003) (concluding that horseback riding is not a major life activity); *cf. Prince v. Claussen,* 1999 WL 152282, at *5 (10th Cir. Mar.22, 1999) (finding walking, standing, running, lifting, *throwing,* squatting, and working are major life activities without explaining what is meant by "throwing").

Driving is also not considered a major life activity by most courts deciding the issue. *See Felix v. N.Y.C. Transit Auth.,* 324 F.3d 102, 106 (2d Cir.2003); *Chenoweth v. Hillsborough County,* 250 F.3d 1328, 1329–30 (11th Cir.2001); *Colwell,* 158 F.3d at 643; *see also Toyota Motor Mfg.,* 534 U.S. at 202, 122 S.Ct. 681 (noting that driving long distances is not a major life activity); *cf. Norris v. Allied–Sysco Food Servs., Inc.,* 948 F.Supp. 1418, 1434 n. 13 (N.D.Cal.1996) (holding a jury could find

driving in California to be a major life activity). Likewise, hugging one's spouse less tightly than before, while certainly of personal significance, is not a major life activity for purposes of this legal analysis as it is not of central importance to most people's daily lives. *See Toyota Motor Mfg.*, 534 U.S. at 197, 122 S.Ct. 681.

Nuzum also asserts that he has difficulty in performing some household chores and specifically is unable to lift a basketful of laundry. Some household chores and manual tasks are considered major life activities. *See id.* at 202, 122 S.Ct. 681 (instructing courts to consider whether an individual can perform tasks such as "household chores, bathing, and brushing one's teeth"). However, the household chores that Nuzum's impairment affects are not major life activities as they are not of central importance to most people's daily lives. *See id.* at 197, 122 S.Ct. 681.

This Court concurs with the assessments of the courts cited above and finds that mowing the lawn, doing assorted outside chores, working on cars, coaching youth sports, throwing balls, driving a vehicle with a manual transmission, and tightly hugging one's spouse are not major life activities within the purview of the ADA's definition of such. In addition, the Court finds that lifting a laundry basket and other household chores involving lifting heavy items do not constitute major life activities. Thus, Nuzum must point to other activities affected by his impairment that do constitute major life activities for the Court to continue its assessment of his claims.

Nuzum accomplishes this by asserting that lifting is a major life activity and that his permanent lifting restrictions are evidence that he is substantially limited in this activity. Ozark concedes that lifting is a major life activity for purposes of the present motion. *See Fjellestad,* 188 F.3d at 948 (stating lifting is a major life activity); *Prince,* 1999 WL 152282, at *5 (including lifting in a list of major life activities). Consequently, the Court will analyze whether Nuzum is substantially limited in the major life activity of lifting.[8]

Finally, Nuzum contends that his elbow pain affects his ability to sleep and to work. For purposes of the current motion, these are both considered major life activities,[9] and the Court will proceed to analyze whether Nuzum's elbow tendinitis substantially limits his ability to perform these major life activities.

### iii. Substantially Limited

Even if some or all of the activities listed by Nuzum are considered major life activities, Ozark contends that Nuzum is not disabled under the ADA because he is not substantially limited in his participation in those activities. Nuzum admits he is able to participate in any activity, as long as it is within his restrictions.

 The Act provides that the impairment must "substantially limit" major life activities. 42 U.S.C. § 12102(2). "Substantially limited" means " '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.' " *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (quoting 29 C.F.R. § 1630.2(j)). Courts can

---

8. The Court does note that limitations on lifting without more is not sufficient to find disability under the ADA. This is discussed, *infra,* at section B.1.a.iii.

9. See footnote 12 regarding working as a major life activity.

take into consideration mitigating factors in making this determination; however, the Supreme Court held that determining if an individual is substantially limited must be decided on a case-by-case basis, without relying solely on mitigating factors. *Compare id.* at 482–83, 119 S.Ct. 2139, *with Bragdon,* 524 U.S. at 641, 118 S.Ct. 2196 *and Nawrot v. CPC Int'l,* 277 F.3d 896, 904 (7th Cir.2002) (holding *Sutton* is not a "license for courts to meander in 'would, could, or should-have' land").

To establish that he is "substantially limited" in any activity, Nuzum must show that his impairment "prevents or severely restricts" his ability to perform that activity as compared with how unimpaired individuals normally perform that activity. *Wood,* 339 F.3d at 685; *see, e.g., Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 960 (8th Cir.2000) (recognizing that moderate limitations on major life activities such as an individual's inability to walk long' distances or climb stairs without becoming fatigued and being subject to certain dietary restrictions does not suffice to constitute a disability under the ADA) (citing *Weber,* 186 F.3d at 914).

 Nuzum has indicated that while he continues to work on cars and do some outside chores, he cannot do them as before. Likewise, he can still throw balls and participate in coaching but cannot do so at the same level he did so before. He can also drive a car; he is just limited to driving a car with an automatic transmission versus a manual transmission. In addition, Nuzum can still hug his wife, just not as hard as before his impairment. Even if these activities constitute major life activities, Nuzum is unable to show that his elbow tendinitis "prevents or se-

verely restricts" his ability to perform these activities. *See Wood,* 339 F.3d at 685 (citing *Toyota Motor Mfg.,* 534 U.S. at 198, 122 S.Ct. 681); *see, e.g., Jones,* 2003 WL 76868, at *6 (holding that restricted involvement in coaching sports does not constitute a substantial limitation on a major life activity); *Anderson v. North Dakota State Hosp.,* 232 F.3d 634, 636 (8th Cir.2000) (assuming without deciding that driving was a major life activity, but concluding as a matter of law that plaintiff was not substantially limited in her ability to drive).

 Nuzum does contend, however, that while mitigating measures may limit the extent to which an impairment is disabling, a personal choice to limit activities in order to minimize said impairment should not cause him to lose out on the protections of the ADA. *See Bragdon,* 524 U.S. at 641, 118 S.Ct. 2196. Indeed, an employer should not be able to claim an individual does not have a disability because that individual chooses to forego potentially mitigating measures. *See Nawrot,* 277 F.3d at 904. For example, Nuzum argues that Ozark should not be allowed to argue that he is not substantially limited in the major life activity of driving because he would have been able to drive an automatic transmission when he only had a vehicle with manual transmission.[10] Nuzum urges the Court to only consider mitigating measures actually taken as "[t]hose who discriminate take their victims as they find them." *Id.*

Nuzum proceeds to argue that just because he can still do some outside chores, work on his car, throw, coach, and hug his wife to varying degrees does not mean

---

**10.** The Court struggles to understand how Plaintiff's tendinitis in his *left* arm could have such a great impact on his ability to drive a manual transmission when all of the shifting is done with the *right* arm. Despite this, the Court accepts for purposes of this motion that Plaintiff's impairment adversely affects his ability to drive a vehicle with a manual transmission.

that he is not substantially limited in these activities as compared to someone who is unimpaired doing the same activity. For example, because coaching children requires coaches demonstrate physical activities to effectively communicate particular fundamentals and skills, Nuzum avers his inability to throw leaves his ability to throw and coach severely restricted. Despite Nuzum's contentions, the Court finds he is not substantially limited in any of these activities. The extent to which he is limited or otherwise affected in these areas is not so great as to be considered a substantial limit on his ability to participate. Indeed, Nuzum can do most activities an unimpaired individual can do, and can do others but just not as well. There is little his impairment precludes him from doing, at least to some extent. The analysis Nuzum suggests necessarily encompasses a far wider range of modest physical limitations than any court has embraced.

Nuzum also contends he is substantially limited in performing household chores, which he considers manual tasks. While Nuzum is unable to perform those household chores deemed too strenuous due to the lifting required, such as lifting heavy baskets of laundry, he did confirm he is able to help out around the house, do laundry, dishes, and pick up after the children. Ozark contends this is evidence that Nuzum is not substantially limited in performing these tasks, even if they are considered major life activities, as he is not prevented or severely restricted from performing such manual tasks. Nuzum only has difficulty in performing some household chores and can perform without restrictions those that do not implicate his lifting restrictions.

■ Many courts have found that the ability to do "light housework" indicates the plaintiff is not substantially limited in the ability to perform manual tasks. *See*

*Toyota Motor Mfg.*, 534 U.S. at 198, 202, 122 S.Ct. 681 (instructing courts to consider whether an individual can perform such tasks as "household chores, bathing, and brushing one's teeth," and whether the plaintiff's limitations prevent or severely restrict his or her ability to perform the manual tasks of central importance to most people's daily lives); *see, e.g., Rakity v. Dillon Cos.*, 302 F.3d 1152, 1159 (10th Cir.2002) (finding plaintiff that was able to do "light housework" was not substantially limited in performing manual tasks); *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 796 (9th Cir.2001) (finding plaintiff that was able to cook, care for herself, grocery shop, and perform "light housework" was not substantially limited in performing manual tasks), *as modified,* 292 F.3d 1045 (9th Cir.2002); *Benge v. Gen. Motors, Inc.*, 267 F.Supp.2d 794, 801–02 (S.D.Ohio 2003) (finding that plaintiff, who needed help performing some household chores but could perform others without assistance, was not substantially limited in performing manual tasks). Indeed, being *diminished* in the ability to perform manual tasks is different from being *substantially limited* in the ability to perform manual tasks. *See Thornton v. McClatchy Newspapers, Inc.*, 292 F.3d 1045, 1046 (9th Cir.2002).

While the Court accepts Plaintiff's contentions that he need not be limited in such everyday tasks as bathing and brushing one's teeth to be deemed substantially limited in performing manual tasks, Nuzum must still show that he is substantially limited in "the types of manual tasks of central importance to people's daily lives ... [to] establish a manual task disability as a matter of law." *Toyota Motor Mfg.*, 534 U.S. at 202, 122 S.Ct. 681. The Court can assess all of the affected activities cumulatively to determine whether Nuzum is substantially limited in performing manual tasks. *Id.* at 197, 122 S.Ct. 681 (stat-

ing that "if each of the tasks included in the major life activity of performing manual tasks does not independently qualify as a major life activity, then together they must do so"); *see also Barnes*, 238 F.Supp.2d at 1072–73 (clarifying consolidated activities analysis as including only those activities in the manual tasks category).

Nuzum desires the Court cumulatively consider his inability to mow the lawn, lift a laundry basket, and provide maintenance to his car as manual tasks and that he is therefore substantially limited in performing the major life activity consisting of manual tasks. However, the Court finds that impairment in these activities does not rise to the level necessary to reach such a conclusion. While Nuzum is unable to perform *some* tasks to the level he once could, or more importantly to the level other people without an impairment can, these tasks are few in comparison to those he can perform. Moreover, there is no evidence in the record he is unable to perform those tasks crucial or necessary to most individuals.

 Nuzum has also stated he is substantially limited in his ability to perform the major life activity of lifting. Ozark accepts that Nuzum has limitations related to lifting but contends he has failed to provide the additional evidence necessary to establish he is prevented or severely restricted in his ability to lift. *Wood*, 339 F.3d at 685. Indeed, the Court noted earlier that a general lifting restriction imposed by a physician without more is insufficient to render a plaintiff disabled under the ADA. *See Dropinski*, 298 F.3d at 707 n. 2; *Conant*, 271 F.3d at 785; *Brunko*, 260 F.3d at 941; *Snow*, 128 F.3d at 1207. The evidence regarding Nuzum's diminished ability to push a lawnmower, throw a ball, hug his wife, and drive a vehicle with a manual transmission adds little to his claim that he is substantially limited in the activity of lifting.

Nuzum relied heavily on the decision in *Webner v. Titan Distribution, Inc.* during oral argument to support his position. In *Webner*, the court found a reasonable jury could have determined plaintiff's impairment substantially limited a major life activity. *Webner*, 267 F.3d at 834. The court included lifting as a major life activity. *Id.* However, Nuzum seeks too much from *Webner*, as that court stated a lifting restriction alone would be insufficient but found that plaintiff's impairment also substantially limited his ability to work, twist, bend, and stand, in addition to limiting his ability to lift. *Id. Webner* can be further distinguished when considering plaintiff in that case suffered from several back injuries for which he had received multiple surgery and continued to receive medical treatment and physical therapy. *Id.* at 833–34. This impairment subjected him to restrictions on bending and lifting and further affected his ability to stand and to walk. *Id.* In the present case, Plaintiff merely suffers from tennis elbow with a resultant limitation in lifting. Thus, the Court finds Nuzum's reliance on *Webner* is unpersuasive.

 Plaintiff also suggests that his elbow tendinitis interrupts his sleep. Nuzum states that rolling onto his elbow during the night causes pain that awakens him. As a result, he contends he sleeps approximately two and one-half hours at a time for a total of four to five hours of sleep per night. Again, Ozark asserts that this does not constitute being substantially limited in the major life activity of sleeping.

Again, the Court notes that an individual is substantially limited in a major life activity if his impairment "prevents or severely restricts" his ability to perform that activity as compared with how unimpaired

individuals normally perform that activity. *See Wood,* 339 F.3d at 685; 29 C.F.R. § 1630.2(j)(1)(ii). Being able to sleep only four to five hours while awakening once is not a severe restriction on sleeping as compared to the average person. *See, e.g., Swanson v. Univ. of Cincinnati,* 268 F.3d 307, 316 (6th Cir.2001) ("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population."); *Pack v. Kmart Corp.,* 166 F.3d 1300, 1306 (10th Cir.1999) (finding that plaintiff who slept two to three hours per night, tossing and turning all night, was not substantially limited in sleeping); *Colwell,* 158 F.3d at 644 (finding no substantial limitation in sleeping where the plaintiff "usually got a tough night's sleep" and explained that "[d]ifficulty sleeping is extremely widespread ... [and plaintiff] made no showing that his affliction is any worse that is suffered by a large portion of the nation's adult population.").[11]

■ Finally, Nuzum contends he is substantially limited in the major life activity of working.[12] For Nuzum to prevail on a substantial limitation in the major life activity of working, he must show that he would have been limited in working various types of jobs. *See Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. When referring to the major life activity of working, the EEOC defined "substantially limits" as "significantly restricted in the ability to perform *either a class of jobs or a broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I) (emphasis added); *see also Sutton,* 527 U.S. at 491–92, 119 S.Ct. 2139. Other factors the Court considers include the geographical area to which the individual has reasonable access and if within that area there exist accessible jobs that are similar in training, knowledge, skills, and abilities. *See Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. "The inability to perform a single, particular job does not

11. Even assuming Nuzum was substantially limited in the major life activity of sleeping (or driving, hugging his wife, doing outside chores, etc., if considered major life activities), Ozark does not have a duty to accommodate such a limitation. The Eighth Circuit stated recently that "[w]here the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity that is limited and the accommodation sought." *Wood,* 339 F.3d at 687. Nuzum did not request any accommodations related to his alleged difficulty sleeping; rather the accommodations sought were related to his lifting restriction. Thus, there is no causal connection between the accommodation sought and the activity limited. *See id.; see. e.g., Felix,* 324 F.3d at 106–07 (affirming grant of summary judgment where the requested accommodation of reassignment was unrelated to sleep impairment).

12. For purposes of summary judgment, Ozark accepts that working qualifies as a major life

activity under the ADA. 29 C.F.R. § 1630.2(I) ("Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."); *but cf. Toyota Motor Mfg.,* 534 U.S. at 200, 122 S.Ct. 681 (stating that because of the "conceptual difficulties inherent in the argument that working could be a major life activity, [the Court] has been hesitant to hold as much"); *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139 (noting the "conceptual difficulty" with defining working as a major life activity under the ADA); *Schuler v. SuperValu, Inc.,* 336 F.3d 702, 704 (8th Cir. 2003) ("Because the ultimate question to be answered in this kind of case is whether a person was denied the opportunity to work because of a disability, it is questionable logic that would resolve that inquiry by determining whether a person is, or is perceived to be, substantially limited in his ability to work."). This Court also accepts, for purposes of this motion *only,* that working is a major life activity.

constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I); *see also Sutton*, 527 U.S. at 491–92, 119 S.Ct. 2139.

As the Court has frequently noted, due to elbow tendinitis, Nuzum is restricted from lifting more than 10 pounds constantly, more than 20 pounds frequently, and more than 40 pounds occasionally. This lifting restriction is the only limitation based on impairment that Nuzum has on his ability to work. It is well established that a lifting restriction alone does not constitute a substantial limitation on the major life activity of working. *See, e.g., Wood*, 339 F.3d at 684, 686 (finding that a plaintiff restricted from lifting more than 50 pounds and from extensive bending, twisting, and lifting was not substantially limited in the major life activity of working); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1022, 1025 (8th Cir.2003) (finding that a plaintiff that was restricted from using vibrating tools, overhead lifting, and repetitive lifting was not substantially limited in any major life activity); *Webner*, 267 F.3d at 834 (stating that "a lifting restriction alone is insufficient to demonstrate that [plaintiff] was substantially limited in the life activity of working" but ultimately concluding plaintiff was substantially limited in working when his lifting restriction was considered in conjunction with his limited ability to twist, bend, and stand); *Taylor*, 214 F.3d at 960–61 (8th Cir.2000) (finding that a 10–pound lifting restriction coupled with a 40–hour work week limitation did not constitute a substantial limitation in the major life activity of working); *Helfter*, 115 F.3d at 617–18 (finding summary judgment appropriate as plaintiff, who had developed chronic problems with her hands, neck, and shoulders while working as a package sorter for UPS and who was restricted from lifting more than 10 pounds frequently and 20 pounds occasionally, was not substantially limited in the major life activity of working); *Aucutt*, 85 F.3d at 1319 (holding that a security guard with a 25–pound lifting limitations due to assorted cardiovascular problems was not "substantially limited in his overall employment opportunities").

Nuzum was a laborer for Ozark, and his position did not require any particular skill, training, or talent. He has a high school diploma without any additional formal education, which limits his selection of alternative employment to some extent. Pursuant to a functional capacity examination, Nuzum was assessed to be able to perform any work requiring "medium" or average physical demands, in addition to light or sedentary positions. Ozark contends that based on the evidence in the record, no reasonable jury could conclude Nuzum's elbow tendinitis rendered him unable to work within the broad class of jobs as an unskilled laborer.

Ozark points to Nuzum's current employment as a stocker at Wal–Mart as evidence of this. As a stocker, Nuzum is required to pick up, lift, carry, and place items of varying sizes on the store shelves.[13] He is able to perform this job without accommodation. Indeed, Nuzum

---

13. Ozark states these items sometimes exceed 50 pounds in weight, and Wal–Mart's job description of stocker seems to bear this out. Nuzum contends, however, that he rarely encounters items of such size and weight, and that when he does, he requests help from another employee pursuant to Wal–Mart policy. Ultimately, whether Nuzum lifts items weighing more than 50 pounds in his position as a stocker at Wal–Mart is inapposite to whether this position is in the same class of jobs as his former position with Ozark. The test is whether the jobs utilize similar training, knowledge, skills, or abilities. *See* 29 C.F.R. § 1630.2(j)(3)(ii)(B). It is apparent that Nuzum's current position as a Wal–Mart stocker is in the same class of jobs as his former order picker position.

has not even informed his current employer of his lifting restrictions, instead signing a form stating he is able to perform the essential functions of the position.

The stocker position is in the same class of jobs as his order picker position with Ozark. *See* 29 C.F.R. § 1630.2(j)(3)(ii)(B) (defining "class of jobs" as "jobs utilizing similar training, knowledge, skills or abilities" as the job from which an individual was disqualified due to his or her impairment). An individual that is able to work in the same class of jobs as that of his former position is not substantially limited in the major life activity of working. *See Sutton,* 527 U.S. at 490–92, 119 S.Ct. 2139; *see, e.g., Felten v. Eyemart Express, Inc.,* 241 F.Supp.2d 935, 942 (E.D.Wis.2003) (finding evidence that plaintiff worked in a similar management position at another company after being fired from the defendant was "strong evidence that the same class or broad range of jobs" was still available to him.).[14]

Nuzum counters by arguing that because of his lifting restriction, he would be unable to hold positions such as a waiter, a commercial truck driver, or a construction worker. Nuzum asserts that because his restrictions preclude him from a large number of jobs, *see Bergdale v. Uni–Select USA Inc.,* 2002 WL 1362229, at *7 (N.D.Iowa May 28, 2002) (finding that restrictions preventing a person from working in different categories such as manufacturing positions and retail positions is enough to generate a genuine issue of material fact as to whether the impairment rises to the level of a disability),[15] the Court should find him substantially limited in the major life activity of working.

The Court finds, however, that Nuzum is not substantially limited in the major life activity of working. Just because he is unable to work in some specific positions of a waiter, commercial truck driver, or construction worker does not necessarily mean he is precluded from working in those categories of positions where the lifting restriction does not apply. Such speculations are not probative of the issues at hand, and Nuzum has failed to provide any evidence as to how his restrictions would prevent him from working in similar positions. *See Marquez v. Bridgestone/Firestone, Inc.,* 353 F.3d 1037, 1038 (8th Cir.2004) (per curiam) (finding plaintiff cannot overcome undisputed evidence and defeat a properly supported summary judgment motion by relying on the mere

**14.** In *Webner,* the court found that plaintiff's lifting restrictions prevented him from performing work that fell into the heavy and very heavy industrial classifications and that he was therefore substantially limited in his ability to work. *Webner,* 267 F.3d at 834. In the present case, while Nuzum is arguably precluded from working in these same classifications based on his lifting restriction, unlike the plaintiff in *Webner,* Nuzum's job at Ozark did not fall into this category of jobs. In addition, the plaintiff in *Webner* had additional restrictions affecting his ability to work, such as limited ability to walk, to stand for long periods of time, to twist, and to bend at the waist. *Id.* Nuzum just has the lifting restriction which is applicable only to his *left* arm, which restriction should not prevent him from lifting without restriction with his *right* arm.

**15.** *Bergdale v. Uni–Select USA Inc.,* another case relied on by Plaintiff at oral argument, is also distinguishable from the present case. In *Bergdale,* the plaintiff was limited to employment at the light work level due to several permanent physical restrictions, including a requirement that she sit down for one hour for every two hours she worked, which limited even further the "light work" she could perform. *Bergdale,* 2002 WL 1362229, at *7. Moreover, while not clear from the record, it seems the court in *Bergdale* was given more than suppositions, ruminations, and speculations as to the types of jobs plaintiff was unable to perform before concluding she was precluded from a large category of jobs. *See id.* This type of evidence is just not present here.

speculation of counsel); *Putman v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir.2003) (same). Moreover, Nuzum's current employment in a position strikingly similar to his former position with Ozark is strong evidence he is able to work in the same class as his former job or in a broad range of jobs in other classes or categories *as long as* he is not required to lift items weighing more or at a greater frequency than his lifting restrictions allow.

Based on the foregoing, the Court finds that Nuzum is not substantially limited in any major life activity. Upon reviewing the record before the Court, the Court must conclude that a reasonable jury could not find that Nuzum was substantially limited in any of the major life activities he listed. As a result, Nuzum cannot establish that he has a disability under the ADA. *See* 42 U.S.C. § 12102(2)(A). As such, there does not exist a genuine issue of material fact on this element of the prima facie case. Consequently, by failing to make a showing on the first element of a disability discrimination claim, Nuzum's claim should be dismissed as a matter of law if he is unable to show a disability under any of the other ADA definitions of disability.

### b. Regarded as Disabled [16]

▆▆▆▆ Under subsection (C) of the ADA, having a disability includes "being regarded as having" a disability as defined under subsection (A). 42 U.S.C. § 12102(2)(C). As a general matter, it is well established that an employer's knowl-

edge of an employee's impairment, without more, is not sufficient to establish that the employer regarded him as having an impairment that substantially limits one or more major life activities. *See Kellogg*, 233 F.3d at 1089; *Olson v. Dubuque Cmty. Sch. Dist.*, 137 F.3d 609, 612 (8th Cir.1998). Rather, there are at least two ways in which an individual can qualify as being regarded as having a disability relevant to the parties' arguments: [17] "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139; *Kellogg*, 233 F.3d at 1089; *Taylor*, 214 F.3d at 961–62; 29 C.F.R. § 1630.2(*l*)(1). As is further explained in the Interpretive Guidance to the relevant guidelines,

> [i]f an individual can show that an employer or other covered entity made an employment decision because of a perception of disability based on 'myth, fear or stereotype,' the individual will satisfy the 'regarded as' part of the definition of disability. If the employer cannot articulate a non-discriminatory reason for the employment action, an inference that the employer is acting on the basis of 'myth, fear or stereotype' can be drawn.

29 C.F.R. pt. 1630, App. § 1630.2(*l*); *see also Sutton*, 527 U.S. at 489, 119 S.Ct. 2139 (" 'Congress acknowledged that society's accumulated myths and fears about dis-

---

**16.** Nuzum concedes that he needed an accommodation to be qualified to perform his order picker position. As a result, Nuzum's claim should probably be dismissed if he did not have an actual disability, as it is well established in the Eighth Circuit that the ADA does not impose upon an employer a duty to accommodate a "regarded as" disabled plaintiff. *See Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir.1999); *Martinez v. Cole Sewell*

*Corp.*, 233 F.Supp.2d 1097, 1132 (N.D.Iowa 2002) (citing cases supporting this proposition). In any event, the Court assesses the parties' arguments on this issue.

**17.** Overall, there are three different ways in which an individual can satisfy the definition of being perceived or regarded as being disabled. *See* 29 C.F.R. § 1630.2(*l*).

ability and disease are as handicapping as are the physical limitations that flow from actual impairment.' ") (quoting *Sch. Bd. of Nassau County v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)).

In *Sutton,* the Supreme Court held that an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment are preferable to others, just as it "is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less ideally suited for a job." *Sutton,* 527 U.S. at 490–91, 119 S.Ct. 2139. In other words, "[t]here is a distinction between being regarded as an individual unqualified for a particular job because of a physical impairment and being regarded as 'disabled' within the meaning of the ADA." *Conant,* 271 F.3d at 785.

■■■ Nuzum contends that he was perceived as disabled in the major life activities of lifting and working. Nuzum did have permanent restrictions placed on him by a physician related to lifting. According to Nuzum, if Ozark did not believe he was disabled as to lifting, then it would not have terminated him but rather would have accommodated his lifting restriction by allowing him to lift small, light items within his limitations. In addition, Nuzum points to seven non-order picker positions filled by Ozark from the time of his termination to April 30, 2002, and to fifteen additional non-order picker positions filled by the company between the time it knew of his permanent restrictions and his termination to show that Ozark perceived him as being unable to perform the major life activity of working.

It is undisputed that Nuzum's permanent restrictions related to his elbow tendinitis prevent him from performing the order picker position without an accommodation. Beyond this, Ozark contends there is no evidence that it considered Nuzum as anything other than an individu-

al unable to perform his regular duties as ordered from a physician and that Nuzum's arguments to the contrary are illogical. Ozark claims that basing its decision on Nuzum's physician-imposed lifting restrictions rather than on myths or archaic attitudes about the disabled weighs against the proposition that Ozark regarded Nuzum as disabled.

Indeed, "[t]he ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden." *Alexander v. Northland Inn,* 321 F.3d 723, 727 (8th Cir.2003). In other words, the employer is entitled to rely on the restrictions from an employee's physician and act accordingly, even if that means the employer concludes the employee cannot perform the essential function of the employee's position. *See Sink v. Wal–Mart Stores, Inc.,* 147 F.Supp.2d 1085, 1095 (D.Kan.2001); *see, e.g., Brunko,* 260 F.3d at 942 (finding plaintiff was not regarded or perceived as disabled when employer's actions based on physician's lifting recommendations and not on myths or archaic notions about the disabled); *Conant,* 271 F.3d at 785–86 (finding no reasonable jury could conclude the employer regarded the plaintiff as disabled where the employer had concluded the plaintiff was unable to perform a particular job due to a 30–pound lifting restriction). The "regarded as" category of disability under the ADA is meant to combat the employer's misperception about the individual, where such misperception is usually the result of stereotypic assumptions that are not truly indicative of individual ability. *See Sutton,* 527 U.S. at 489, 119 S.Ct. 2139.

Ozark further argues that its conclusion regarding Nuzum's inability to perform the order picker position as a result of his restrictions is not evidence that Ozark regarded Nuzum as substantially limited in

the major life activity of working. To establish that Ozark regarded Plaintiff as substantially limited in the major life activity of working, Nuzum must establish that Ozark regarded him "as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I); *Cooper*, 246 F.3d at 1089. Ozark contends that at best, Nuzum can show the Company regarded him as unable to perform one particular job, i.e., the order picker position. Such a showing is inadequate as a matter of law. *See* 29 C.F.R. § 1630.2(j)(3)(I); *Cooper*, 246 F.3d at 1090 (concluding that an employer's conclusion that an employee was precluded from her particular locomotive job is not sufficient to indicate the employer considered her to be disabled in the activity of working); *see also Sutton*, 527 U.S. at 492–93, 119 S.Ct. 2139 (finding employees failed to show they were regarded as being substantially limited in their ability to perform either a class of jobs or a broad range of jobs in various classes); *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523–25, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (same).

The fact that Ozark encouraged Nuzum to look and apply for other positions that were within his lifting restrictions tends to further establish that Ozark did not regard Nuzum as disabled. *See Brunko*, 260 F.3d at 942 (finding that record shows plaintiff precluded only from a narrow range of jobs as evidenced by subsequent employment and the fact that former employer offered her other positions within her lifting restrictions); *see also Miller*, 252 F.Supp.2d at 811 (finding that no reasonable jury could find the employer regarded the plaintiff as substantially limited in the major life activity of working where the plaintiff presented no evidence concerning available jobs in the accessible geographic area and where the employer had offered the employee another position within the company). In the present case, Nuzum expressly rejected a part-time security position with Ozark that was within his capabilities.

The Court finds the record is insufficient to find Nuzum was regarded as disabled in the present case. Ozark merely followed the doctor-prescribed limitations and its own company policies in determining Nuzum was unable to fulfill his order picker position. He was then granted time to find another position for which he was qualified or otherwise present the Company with some sort of reasonable accommodation. He failed to do so. As to the 22 positions filled by the Company from February through the end of April 2002, Nuzum does nothing more than mention these statistics without providing the Court with any basis to conclude he was not moved to one of these positions because Ozark regarded him as disabled in either of the major life activities of lifting or working.[18]

---

18. Indeed, in Defendant's Reply Brief, Ozark clarifies that the full-time positions filled from April 4 through April 30, 2002, included three types of materials handler positions, a stocker, and a packer loader. All of these positions require the employee lift up to 60 pounds on a regular basis, and further require the employee handle the same auto parts and totes handled by the order pickers albeit at different stages of the receiving or shipping process. Thus, to the extent any of these positions was "open" during the relevant period, Nuzum would have been unable to fill them due to his lifting restrictions.

Similarly, the other 15 positions Nuzum alludes to were all filled prior to April 4, 2002, leaving Nuzum unable to show that any of them were vacant during the relevant time frame, let alone that he was qualified to fill them. Nuzum did nothing to dispute this evidence.

## 2. Plaintiff as Qualified Individual with Disability Under the ADA

The Court need not analyze Defendant's additional contentions because of its determination that Nuzum is not disabled under the ADA. As a result, the Court declines to discuss whether Plaintiff is a "qualified individual with a disability" as defined by the ADA and whether Ozark failed to provide reasonable accommodations to him based on this disability.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Clerk's No. 17) is hereby **granted.** While the lifting limitations caused by Nuzum's elbow tendinitis are real and undoubtedly inconvenience his life, they are insufficient to sustain an ADA claim. *See Wood*, 339 F.3d at 686. Nuzum is unable to make a sufficient showing on the prima facie elements of an ADA claim, specifically that he has a disability as defined by the ADA. The Court thus helds that Nuzum's claims for disability discrimination under the ADA and ICRA are **dismissed** as a matter of law.

**IT IS SO ORDERED.**